IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

WAYNE SAPP, et al.,

    Plaintiffs,

v.                                       CASE NO.: 1:09cv242-SPM/GRJ

SCHOOL BOARD OF ALACHUA
COUNTY, FLORIDA,

    Defendant.

_____/

**<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

      This case presents a challenge to the dress code policies of the School Board of Alachua County, Florida ("School Board"). Plaintiffs come from two families with children attending public schools in the Alachua County School District. They are members of the Dove World Outreach Center church, which gained a significant amount of publicity when in July of 2009 it posted a billboard on church property with the statement "Islam is of the Devil."[1] There was a strong reaction from the community, including protestors demonstrating across the street from the church, acts of vandalism, and press coverage.

---

    [1] The Dove World Outreach Center and its pastor Dr. Terry Jones gained international press coverage for its "International Burn A Koran Day," which was planned for September 11, 2010. Dr. Jones eventually cancelled the plan. The actions by the School Board challenged in this case predate these events.

In keeping with the message on the billboard, the church made t-shirts with "Islam is of the Devil" printed on the back.  The front of the t-shirts said  "I stand in truth with Dove World Outreach Center Jesus answered I am the way and the truth of life; no one goes to the Father except through me."  Another versions of the t-shirt has "I.I.O.T.D." printed on back instead of "Islam is of the Devil."

The seven child Plaintiffs wore the t-shirts to school during the 2009-2010 school year at various Alachua County public schools.  They were sent home for violating the School Board's dress code policy, which required students to "dress in a way that does not disrupt or distract from the educational process . . . [and] is not offensive to others or inappropriate at school and at school sponsored events . . . ."  Doc. 5-2, 5511-Dress and Grooming, at 34.  The same policy was also enforced at a high school football game when a group of parents and students from the Dove World Outreach Center wore the t-shirts and were directed to leave the game.

In a previous order, the Court denied Plaintiff's' motion for preliminary injunction, finding that Plaintiffs' request for prospective injunctive relief was rendered moot by substantial changes effected by a new dress code policy enacted for the 2010-2011 school year.  The new dress code requires students to wear "uniforms" in school, which consist of solid color shirts, pants, skirts, and shorts without color trims, embroidery, or decoration.  The new dress

code contains an additional provision that applies to outer garments and accessories worn in school and to clothing worn after school at school sponsored activities.  Such clothing and accessories cannot "have slogans, signs, images, or symbols that . . . denigrate or promote discrimination for or against an individual or group on the basis of age, color, disability, national origin, sexual orientation, race, religion, or gender."  Doc. 56-1, 5511-Code of Student Conduct-Dress Code, at 1 and 3.

Plaintiffs have filed an amended complaint seeking a declaratory judgment regarding the constitutionality of the old and new dress codes, an award of nominal damages, and a permanent injunction against the new dress code for outer garments and accessories worn in school and to clothing worn to school sponsored activities.  Plaintiffs do not challenge the portion of the new dress code requiring students to wear uniforms.

Both Plaintiffs and the Defendant School Board have filed motions for summary judgment.  Docs. 84 and 97.  Upon careful review of the arguments now submitted by the parties, the Court finds that the School Board is entitled to judgment as a matter of law.

**Standing, Ripeness, and Mootness**

As an initial matter, the Court is obligated to address its jurisdiction to consider this case.  Jurisdictional issues of standing, ripeness, and mootness arise from the fact that the new dress code has not actually been applied to

Plaintiffs' t-shirts and three of the minor Plaintiffs (E.S., A.B. and M.B.) are no longer enrolled in school.

The case or controversy requirement of Article III of the Constitution prohibits federal courts from adjudicating issues in the abstract. Thus, a plaintiff is required to show that he has standing to bring a case by demonstrating that he has a real stake in the issue for the Court to resolve. "To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision. Kelly v. Harris, 331 F.3d 817, 819 (11th Cir. 2003). Once standing is established, related concepts of ripeness and mootness will affect the Court's prudential decision to exercise jurisdiction over the case.

Ripeness focuses on the proper timing of the suit. Ouachita Watch League v. Jacobs, 463 F.3d 1163, 1174 (11th Cir. 2006). "The ripeness inquiry is designed 'to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative polices, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Id. (quoting Abbot Labs v. Gardner, 387 U.S. 136, 148-49 (1967). Some factors to consider are whether application of the administrative

policy to the facts of the case is definite and final, or whether application is dependent upon facts that have yet to develop. Mulhall v. Unite Here Local 355, 618 F.3d 1279, 1291 (11th Cir. 2010). The Court should also consider the hardship to the parties if review is delayed until conditions become better for deciding the case. Id.

Mootness focuses on whether a change of circumstance after the filing of the lawsuit brings an end to the controversy so that a ruling by the Court would provide no meaningful relief. Courts have generally found that when students graduate or are no longer in school, their challenge to school policies become moot. See Adler v. Duval County Sch. Bd., 112 F.3d 1475, 1478 (11th Cir. 1997).

In this case, three of the student Plaintiffs–E.S., A.B., and M.B.–are no longer enrolled in school. Accordingly, their claims for declaratory and injunctive relief have become moot, and they may only proceed on their claim for nominal damages based on enforcement of the 2009-2010 dress code policy. Adler v. Duval County Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997) (students' claims for declaratory and injunctive relief became moot when they graduated, but claim for money damages could proceed because it did not depend on future harm).

As for the remaining Plaintiffs' challenge to the new dress code policy, the Court finds that Plaintiffs have established standing and ripeness even though they have not actually worn "Islam is of the Devil" t-shirts or similar outer

garments and accessories to school or school sponsored events after the new policy took effect.  It is enough to establish standing in a First Amendment case if the plaintiffs have an objectively reasonable fear that their speech will be prohibited.  Pittman v. Cole, 267 F.3d 1269, 1283-84 (11th Cir. 2001).  Given the message on the t-shirts and the reaction that they have already garnered, there are strong reasons to believe that the t-shirts would be prohibited under the new policy as well.  Concerns of ripeness are allayed by the fact that the message Plaintiffs wish to display is already known, as well as the school officials' reaction to it.  Thus the Court is not deciding the case in the abstract.  The facts are well developed and it would not be helpful to require Plaintiffs to wear the t-shirts again as a condition of having their claims heard.

**Regulation of Student Speech**

The United States Supreme Court has consistently held that the First Amendment rights of school students are not as broad as the rights of adults in public forums.  Morse v. Frederick, 551 U.S. 393, 405 (2007).  Students' First Amendment rights are measured "in light of the special characteristics of the school environment."  Id. quoting Tinker v. Des Moines Indep. Commty Sch. Dist., 393 U.S. 503, 506 (1969).   School facilities are not public forums and speech within them may be regulated consistent with "legitimate pedagogical concerns."  Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 273 (1988).

In regulating speech, the Eleventh Circuit Court of Appeals has explained

that "school officials are on their most solid footing when they reasonably fear that certain speech is likely to appreciably disrupt the appropriate discipline in the school." Scott v. Sch. Bd. of Alachua County, 324 F.3d 1246, 1248 (11th Cir. 2003) (quoting District Judge Maurice M. Paul, other quotations and citations omitted).  Secondly, "even if disruption is not immediately likely, school officials are charged with the duty to inculcate the habits and manners of civility as values conducive to both happiness and to the practice of self government." Id.  "To do so, they must have the flexibility to control the tenor and contours of student speech within school walls or on school property, even if such speech does not result in reasonable fear of immediate disruption." Id.

Thus, schools may legitimately proscribe the use of "vulgar and offensive terms" and the use of terms that are "highly offense or highly threatening to others." Scott, 324 F.3d at 1248 (quoting Bethel Sch. Dist. v. Frasier, 478 U.S. 675, 683 (1986).  Where emotionally-charged issues are involved, "[i]t is not only constitutionally allowable for school officials to closely contour the range of expression children are permitted regarding such volatile issues, it is their duty to do so." Scott, 324 F.3d at 1249.

In this case, the School Board found that Plaintiffs' t-shirts violated the 2009-2010 dress code policy, which required students to "dress in a way that does not disrupt or distract from the educational process . . . [and] is not offensive to others or inappropriate at school and at school sponsored events . . .

CASE NO.: 1:09cv242-SPM/GRJ

." Doc. 5-2, 5511-Dress and Grooming, at 34. Based on the principles articulated above, the School Board did not violate Plaintiffs' constitutional rights

"Islam is of the Devil" presents a highly confrontational message. It is akin to saying that the religion of Islam is evil and that all of its followers will go to hell. The message is not conducive to civil discourse on religious issues; nor is it appropriate for school generally. "Part of a public school's mission must be to teach students of differing races, creeds and colors to engage each other in civil terms rather than in terms of debate highly offensive or highly threatening to others." Scott, 324 F.3d at 1249 (quoting West v. Derby Unified Sch. Dist. No. 260, 23 F.Supp.2d 1223, 1233-34 (D. Kan. 1998). Plaintiffs' t-shirts were in direct conflict with this mission.

Perhaps the t-shirts were specifically designed to draw attention and notoriety upon the Dove World Outreach Center. If so, they were very effective. Had Plaintiffs chosen to wear the t-shirts in a public forum, likely they would be well within their First Amendment rights to do so. Plaintiffs, however, used the public schools as a platform to gain attention. A school is not a public forum.[2] "A

---

[2] "[S]chool facilities may be deemed to be public forums only if school authorities have by policy or by practice opened those facilities for indiscriminate use . . . ." Kuhlmeir, 484 U.S. at. 568. "If the facilities have instead been reserved for other intended purposes, "communicative or otherwise," then no public forum has been created, and school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community." Id.

CASE NO.: 1:09cv242-SPM/GRJ

school need not tolerate student speech that is inconsistent with its basic educational mission even though the government could not censor similar speech outside the school." Kuhlmeir, 484 U.S. at 567 (internal citation omitted).

Plaintiffs' t-shirts did in fact cause disruption at the schools. On October 7, 2009, Plaintiff L.B. complained to Assistant Principal Bruce Johnson of Westwood Middle School that he was being harassed by eighth grade students who were chanting "We love Islam." One student told L.B. that, "My friend is a Muslim, and he's going to kill you." An investigation determined that some friends of a Muslim student took it upon themselves to stick up for their friend. The Muslim student was not involved in the incident.

On October 2, 2009, Plaintiffs attended a high school football game between Eastside High School and Gainesville High School at Citizen's Field. Extra security had been ordered due to the intense rivalry between the schools and because of disturbances (unrelated to the t-shirts) that had previously taken place at the game between the schools. A group of parents and students from the Dove World Outreach Center were wearing the "Islam is of the Devil" t-shirts. An Eastside High School student became upset and called her mother to come pick her up. The mother advised the school principal. The group was escorted from the stands and directed to leave the game because the t-shirts offended others present and were banned in school.

Principal William Burklew of Talbot Elementary School received

complaints from parents who were concerned about the safety of their children given the school's close proximity to the Dove World Outreach Center and the distraction caused to the learning environment.  Other parents complained that the anti-Islamic message was not appropriate in an elementary school where children are a captive audience.  After national press coverage of the t-shirts, Principal Burklew received disturbing and threatening emails that caused him to fear for the safety and well-being of the students and employees at Talbot Elementary School, as well as his own family.

Principal Jeff Charbonnet of Easide High School determined that the t-shirts violated the dress code because the message was offensive and demeaning to Muslim students[3], was a distraction to the learning environment, and could cause an unsafe environment due to the polarizing effect of the anti-Islamic message.  Principal Charbonnet based his decision on his experience of nearly 14 years as a school principal and his knowledge of the community's response to the Dove World Outreach Center's sign reading "Islam is of the Devil."

Principal R. Wiley Dixon has been the principal of Gainesville High School for 8 years and has 38 years of experience as an educator.  According to Principal Dixon, the message on the t-shirt is problematic because it singles out a

---

[3] Approximately 25 Muslim students attend Eastside High School.

group of people and calls them evil.  He explains that messages that are offensive and hurtful to a group leads to problems at school.  He believes students would make an issue out of wearing the t-shirt, which would lead to unnecessary distraction and a hostile environment.

Principal Jim Tenbeig of Westside Middle School has 29 years of experience.  He believes that allowing the children to wear the t-shirts at school would result in a distraction to the learning environment and would foster a hostile and intimidating atmosphere for students.  The same view is held by assistant principal Bruce Johnson, who states that the t-shirts caused distraction at the middle school and compromised the school's ability to provide a safe and effective educational setting.

Given the totality of the circumstances, the School Board did not violate Plaintiffs' rights by applying the 2009-2010 dress code policy to prohibit their t-shirts in school or and at the school sponsored football game.  "[S]chool officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community" consistent with the intended purpose of their facilities and sponsored-functions.  Kuhlmeir, 484 U.S. at. 568.  In this case, school officials had a reasonable fear that the t-shirts were likely to interrupt school activities and "appreciably disrupt appropriate discipline in the school." Scott, 324 F.3d at 1248 (quoting Tinker, 393 U.S. at 514).  Allowing Plaintiffs to wear the t-shirts was inconsistent with the schools' mission to inculcate values of

CASE NO.: 1:09cv242-SPM/GRJ

civil speech and decorum among students of "differing races, creeds, and colors."  Id. at 1249 (quoting West v. Derby Unified Sch. Dist. No. 260, 23 F.Supp.2d 1223, 1233-34 (D. Kan. 1998).  Because the School Board did not violate Plaintiffs' First Amendment rights by prohibiting the t-shirts, Plaintiffs' claims for nominal damages based on enforcement of the 2009-2010 dress code policy must fail.

With regard to the 2010-2011dress code, Plaintiffs challenge the provision that prohibits students from wearing after school at school sponsored activities "clothing or accessories that . . . denigrate or promote discrimination for or against an individual or group on the basis of age, color, disability, national origin, sexual orientation, race, religion, or gender."  Doc. 56-1, 5511-Code of Student Conduct-Dress Code, at 1.  The dress code contains the same prohibition on outer garments and accessories that are worn in school.  Id. at 3.

The language of the new policy is similar to many anti-discrimination laws that are applied in workplaces to protect employees from harassment.  It furthers important governmental and pedagogical concerns.  See e.g. Morse v. Frederick, 551 U.S. 393 (2007) (principal did not violate student's right to free speech by confiscating banner that was reasonably viewed as promoting illegal drug use given legitimate pedagogical concerns and important governmental interest in deterring drug use).  The government's interest in protecting children from hateful speech at school, and to teach students the bounds of civil discourse, is no less

compelling than the government's interest in protecting adults from unreasonable harassment at work.  "The maintenance of discipline in the schools requires not only that students be restrained from assaulting one another, abusing drugs and alcohol, and committing other crimes, but also that students conform themselves to the standards of conduct prescribed by school authorities."  <u>Davis v. Monroe Cnty Bd. of Educ.</u>, 526 U.S. 629, 647 (1999) (citing <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 342, n.9 (1985).   Given our diverse society, American schools have a particularly compelling interest in teaching students "the habits and manners of civility as values conducive to both happiness and to the practice of self government."  <u>Fraser</u>, 478 U.S. at 681.

In light of the special characteristics of the school environment and the schools' legitimate pedagogical interests, the 2010-2011 policy can be applied to prohibit Plaintiffs' t-shirts (and similar outer clothing or accessories) without running afoul of the First Amendment.  "If the schools are to perform their traditional function of inculcating the habits and manners of civility they must be allowed the space and discretion to deal with the nuances."  <u>Muller</u>, 98 F.3d at 1543.  Schools are rightly afforded a great deal of discretion because of the difficulty of their educational mission and the fact that "[a]n education in manners and morals cannot be reduced to a simple formula."  <u>Id.</u>  "[T]he determination of what manner of speech in the classroom or in school assembly is inappropriate properly resets with the school board, rather than with the federal courts."

<u>Kuhlmeir</u>, 484 U.S. at 567-68.  Based on the foregoing, it is

ORDERED AND ADJUDGED:

1. The claims of Plaintiffs E.S., A.B., and M.B. for declaratory and injunctive relief are dismissed as moot.

2. The School Board's amended motion for summary judgment (doc. 97) is granted as to all remaining claims.  The clerk shall enter judgment accordingly.

3. Plaintiffs' motion for summary judgment (doc. 84) is denied.

4. The consent motions for leave to withdraw and to file excess pages (docs. 141 and 83) are granted.

5. The other pending motions (docs. 79, 124, and 150) are denied as moot.

DONE AND ORDERED this 30th day of September, 2011.

*s/ Stephan P. Mickle*
Stephan P. Mickle
Senior United States District Judge